August 20, 2024

MAGISTRATE JUDGE STEVEN I. LOCKE
100 Federal Plaza
Courtroom 820
Central Islip, NY 11722

    Re: Yitzhak, et al. v. Verner, et al.
       2:24-cv-03552

Dear Judge Locke:

  Plaintiffs write this letter motion in furtherance of your individual practice rule 4(A)(i), requesting permission from this Court to move for an Order seeking to compel the provision of documents and answer interrogatories responsive to the discovery demands served and in accordance with the clear directive of this Court, together with the costs and fees for the making of this application. Prior to filing the within letter, the undersigned correspondence with Defendants' counsel. However, as has been experienced since the commencement of this matter, this effort at communication was not answered.

  The Court's scheduling Order of June 25, 2024 reads: "This case is primarily about Plaintiff getting access to documents to establish a paper trail concerning funds held at one point in Defendant Verner's escrow account." As the Court is aware, Defendants did not turn over financial records and we re-convened before the Court on July 30, 2024. The Court directed a short discovery schedule. Attached hereto are Plaintiff's discovery demands and interrogatory responses. Also attached are Respondent's responses.

  In Gesualdi, et al. v. Interstate Payroll Company, Inc. 14-cv-6780 (EDNY 2016, USNJ Locke), the Court found: "Pursuant to Fed. R. Civ. P. 26: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." Freydl v. Meringolo, No. 09 Civ. 7196, 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011). It is well-established that district courts have "broad discretion in deciding a motion to compel discovery." Id.

Plaintiff's demands were very focused. For example, at Demand 1, Plaintiff sought: "Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Troy Lambe." In response, Defendants provided nothing responsive and instead filed a boilerplate objection: "Respondent objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case."[1] This improper objection was regurgitated for most of the responses, and Defendants did not provide anything responsive to the foregoing demand. Demand 2 was similarly focused: "Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Janet Lambe." Again, Defendants did not provide anything responsive to this demand, filing the same bad-faith objection.

The remainder of the demands were focused on the Judgment Debtors and the recipients of funds from Verner's escrow account. As noted, Defendants refused to provide documents concerning the same.

There can be no doubt that Defendants have not engaged in good faith discovery and plainly have violated the directive of this Court to turn over financial information.

Pursuant to Rule 37(a)(5), Plaintiffs are entitled to recover their fees for the making of this motion.

Plaintiffs hereby request that this Court permit a motion to compel, seeking all costs and fees incurred as a result of the bad faith conduct of Defendants in refusing to adhere to this Court's Order and in repeatedly refusing to cooperate with discovery.

Respectfully submitted,

THE WEINSTEIN GROUP, P.C.

LLOYD J. WEINSTEIN, Esq.

---

[1] Although nothing was produced, in the responses, the Court can see that Defendants repeat the incomplete sentence: "Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously."

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

THE LAW OFFICES OF ERICA T. YITZHAK
AND ERICA T. YITZHAK ESQ, P.C.

      Petitioner,

                              Case: 2:24-cv-03552 (RER)SIL

      -Against-

TROY LAMBE, MAX DIVERSIFIED INC.,
SUNRAY SOLAR INC., AND PAUL VERNER,

      Respondent(s)

------------------------------------------------------------X

## REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34 and the Local Rules (Discovery Guidelines), Plaintiffs, The Law Offices of Erica T. Yitzhak and Erica T. Yitzhak, Esq., P.C., by its undersigned attorneys, requests that PAUL VERNER respond to this Request for Production of Documents on the 16th day of August, 2024, the time prescribed by the Order of the Court by US Magistrate Judge Locke dated July 30, 2024.

## INSTRUCTIONS

1.    Pursuant to Rule 34(b)(2)(B), if you object to a request, the grounds for each objection must be stated with specificity.

2.    If, in responding to this Request for Production, the responding party encounters any ambiguities when construing a request or definition, any response shall set forth the matter deemed ambiguous and the construction used in responding.

3.    Pursuant to Rule 34(b)(2)(C), an objection must state whether any responsive materials are being withheld and the basis of that objection.

4.    Whenever in this Request you are asked to identify or produce a document which is deemed by you to be properly withheld from production for inspection or copying:

A.    If you are withholding a document under claim of privilege (including, but not

limited to, the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5) and Discovery Guideline 10(d)(ii)(b). For electronically stored information, a privilege log (in searchable and sortable form) is required.

B.  If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery, identify as to each document and, in addition to the information requested in paragraph 4.A, above, please state the reason for withholding the document.

C.  If you are withholding production on the basis that ESI is not reasonably accessible because of undue burden or cost, provide the information required by Discovery Guideline 10(e).

5.  When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

6.  It is intended that this Request will not solicit any material protected either by the attorney/client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this litigation was commenced. If any Request is susceptible of a construction which calls for the production of such material, that material need not be provided and no privilege log pursuant to Fed. R. Civ. P. 26(b)(5) or Discovery Guideline 9(a) will be required as to such material.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the

Federal Rules of Civil Procedure. As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1. *Communication:* The term "communication" means the transmittal of information by any means.

2. *Concerning:* The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

3. *Document:* The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "items" in Fed. R. Civ. P. 34(a)(1) and include(s), but is not limited to electronically stored information. The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document."

4. *Form or Forms:* If documents are produced as electronically stored information, they shall be produced in the following form or forms: [to be determined by the requesting party consistent with Guideline 2.04 of the ESI Principles].

5. *Occurrence/Transaction:* The terms "occurrence" and "transaction" mean the events described in the Complaint and other pleadings, as the word  pleadings" is defined in Fed. R. Civ. P. 7(a).

6. *Parties:* The terms "plaintiff" and "defendant" (including, without limitation, third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant, and cross-defendant), as well as a party's full or abbreviated name or a pronoun referring to a party, mean that party and, where applicable, its officers, directors, and employees. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

7. *Person*: The term "person" is defined as any natural person or any business, legal or governmental entity, or association.

8. *You/Your:* The terms "you" or "your" include the person(s) to whom this Request is addressed, and all of that person's agents, representatives, and attorneys.

9.     The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all;" "any" means "any and all."  "Including" means "including but not limited to."  "And" and "or" encompass both "and" and "or." Words in the masculine, feminine, or neuter form shall include each of the other genders.

10.    If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

## DOCUMENT DEMANDS

1.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Troy Lambe.

2.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Janet Lambe.

3.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Max Diversified, Inc.

4.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Sunray Solar, Inc.

5.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money sent to or for the benefit of Troy Lambe.

6.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money sent to or for the benefit of Janet Lambe.

7.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money sent to or for the benefit of Max Diversified, Inc.

8.	Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money sent to or for the benefit of Sunray Solar, Inc.

9.	Evidence of payment(s) made to PAUL VERNER and/or an entity under his control, for legal fees or other services to any of Troy Lambe, Janet Lambe, Max Diversified, Sunray Solar. The foregoing demand response shall include copies of bank statements, wire transfer information, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications.

10.	True copies of bank statements for the Escrow, IOLA, IOLTA, Special, Trust or other similar attorney account for the time period January, 2015 to the present day, of Paul W. Verner, individually and of Verner Simon.

11.	Documents which support or refute the allegations made in the Affidavit of Troy Lambe dated May 29, 2020, filed at NYSCEF 150, and specifically at paragraph 10 thereof which reads, in part: "Mr. Verner is protected because he continues to hold by my calculations in escrow a substantial amount of monies (approx. $94,500.00-$418,000.00) from the Federal Court and Yitzhak settlements of $1.6 Million Dollars combined, which he will maintain until the fee dispute is resolved."

12.	Documents that concern Respondent's written representation on February 14, 2024 that "monies were paid to me [Verner]" including an accounting of monies referenced, how the same were sent and received and how the same were used, if they were.

13.	Documents that concern Respondent's written representation on February 14, 2024 that "those funds were depleted" including an accounting of monies referenced, how the same were received and how the same were used, if they were.

14.	Documents supportive of the third affirmative defense set forth in the Answer of the Respondent. Document 9.

15.	Documents supportive of the fourth affirmative defense set forth in the Answer of the Respondent. Document 9.

16.	Documents supportive of the seventh affirmative defense set forth in the Answer of the Respondent. Document 9.

17.	Documents supportive of the eighth affirmative defense set forth in the Answer of the Respondent. Document 9.

18.	Documents supportive of the eleventh affirmative defense set forth in the Answer of the Respondent. Document 9.

19.	Documents supportive of the first paragraph of Declaration of Paul W. Verner dated July 25, 2024.

20.	Documents supportive of the third paragraph of Declaration of Paul W. Verner dated July 25, 2024.

21. Documents supportive of the seventh paragraph of Declaration of Paul W. Verner dated July 25, 2024.
22. Documents supportive of the eleventh paragraph of Declaration of Paul W. Verner dated July 25, 2024.
23. Copies of any accounting concerning money received and distributed concerning Plaintiffs herein.
24. Copies of any ledgers concerning money received and distributed concerning Plaintiffs herein.
25. Documents supportive of the seventeenth paragraph of Declaration of Paul W. Verner dated July 25, 2024.
26. Documents supportive of the eighteenth paragraph of Declaration of Paul W. Verner dated July 25, 2024.
27. Documents supportive of the nineteenth paragraph of Declaration of Paul W. Verner dated July 25, 2024.

Dated:     August 6, 2024
           Syosset, New York


                    Respectfully submitted,

                    THE WEINSTEIN GROUP, P.C.

                    By:

                    LLOYD J. WEINSTEIN, Esq.
                    (Rule §130-1.1a) (NYS Tech Law §304(2))
                    6800 Jericho Turnpike, Suite 112W
                    Syosset, New York 11791
                    Telephone: 516-802-5330
                    Facsimile: 516-802-5332
                    ljw@theweinsteingroup.net

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THE LAW OFFICES OF ERICA T. YITZHAK
AND ERICA T. YITZHAK ESQ, P.C.

      Petitioner,

                            Case: 2:24-cv-03552 (RER)SIL

      -Against-

TROY LAMBE, MAX DIVERSIFIED INC.,
SUNRAY SOLAR INC., AND PAUL VERNER,

      Respondent(s)
-----------------------------------------------------------X

      Pursuant to Fed. R. Civ. P. 26(e), 33, 34 and 45, and Local Civil Rule 33.2, the defendants shall answer, under oath, the following interrogatories.

## INSTRUCTIONS

1.      Pursuant to Rule 34(b)(2)(B), if you object to a request, the grounds for each objection must be stated with specificity.

2.      If, in responding to this Request for Production, the responding party encounters any ambiguities when construing a request or definition, any response shall set forth the matter deemed ambiguous and the construction used in responding.

3.      Pursuant to Rule 34(b)(2)(C), an objection must state whether any responsive materials are being withheld and the basis of that objection.

4.      Whenever in this Request you are asked to identify or produce a document which is deemed by you to be properly withheld from production for inspection or copying:

A.      If you are withholding a document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5) and Discovery Guideline 10(d)(ii)(b).  For electronically stored information, a privilege log (in searchable and sortable form) is required.

B.      If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery, identify as to each document and, in addition to the information requested in paragraph 4.A, above, please state the reason for withholding the document.

C.      If you are withholding production on the basis that ESI is not reasonably accessible because of undue burden or cost, provide the information required by Discovery Guideline 10(e).

5.      When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without

thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

6.     It is intended that this Request will not solicit any material protected either by the attorney/client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this litigation was commenced.  If any Request is susceptible of a construction which calls for the production of such material, that material need not be provided and no privilege log pursuant to Fed. R. Civ. P. 26(b)(5) or Discovery Guideline 9(a) will be required as to such material.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1.     *Communication:*  The term "communication" means the transmittal of information by any means.

2.     *Concerning:*  The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

3.     *Document:*  The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "items" in Fed. R. Civ. P. 34(a)(1) and include(s), but is not limited to electronically stored information. The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001.  A draft or non-identical copy is a separate document within the meaning of the term "document."

4.     *Form or Forms:*  If documents are produced as electronically stored information, they shall be produced in the following form or forms: [to be determined by the requesting party consistent with Guideline 2.04 of the ESI Principles].

5.     *Occurrence/Transaction:*  The terms "occurrence" and "transaction" mean the events described in the Complaint and other pleadings, as the word  pleadings" is defined in Fed. R. Civ. P. 7(a).

6.     *Parties:* The terms "plaintiff" and "defendant" (including, without limitation, third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant, and cross-defendant), as well as a party's full or abbreviated name or a pronoun referring to a party, mean that party and, where applicable, its officers, directors, and employees.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

7.    *Person*:  The term "person" is defined as any natural person or any business, legal or governmental entity, or association.

8.    *You / Your:*  The terms "you" or "your" include the person(s) to whom this Request is addressed, and all of that person's agents, representatives, and attorneys.

9.    The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all;" "any" means "any and all."  "Including" means "including but not limited to."  "And" and "or" encompass both "and" and "or." Words in the masculine, feminine, or neuter form shall include each of the other genders.

10.    If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

## INTERROGATORY DEMANDS

With respect to each of (a) Troy Lambe; (b) Janet Lambe; (c) Max Diversified and (d) Sunray Solar, Inc. ("Identified Party"), provide the following information:

1. Full name; Known alias or alternate name used

2. Current address and length of time at that address

3. Current occupants of any address provided in 2, above

4. Whether the Identified Party owns or rents any property and the amount of any rent

5. The social security or tax identification number of any Identified Party

6. The occupation or profession or business of any Identified Party

7. The name/identity of any owners of Max Diversified and/or Sunray Solar, Inc.

8. The name/identity and street location of any bank utilized by the Identified Party

9. The full routing and account number for any bank account held in whole or in part by any of the Identified Party

10. The current balance of any account at any bank of any Identified Party

11. With respect to any Identified Party, list all foreign and/or U.S. bank, brokerage, and investment accounts (including but not limited to savings, checking, money market, mutual funds, cryptocurrency, certificates of deposit, and credit union accounts)

12. With respect to any Identified Party, list all U.S. retirement accounts (including but not limited to IRAs, deferred compensation, Keoghs, pension, and 401(k) accounts), as well as annuities

13. With respect to any Identified Party, provide the total market value of all U.S. government-issued bonds, notes, and bills (e.g., savings bonds, municipal bonds, treasury notes)

14. With respect to any Identified Party, list all U.S. stocks that are not held in a brokerage account, and all bonds that are not government-issued

15. With respect to any Identified Party, provide details below if any has direct control or ownership of foreign financial businesses, foreign bank accounts, or other foreign financial interests (including but not limited to stocks, annuities, retirement accounts, government-issued bonds, notes, and bills, investments, or ownership of corporate entities)

16. With respect to any Identified Party, provide details below if it has a foreign interest that someone else controls on its behalf (including but not limited to

stocks, annuities, retirement accounts, government-issued bonds, notes, and bills, investments, or ownership of corporate entities)

17. With respect to any Identified Party, provide details if it is owed money (e.g., personal loans, promissory notes)

18. With respect to any Identified Party, provide details of any pension or retirement benefit collected

19. With respect to any Identified Party, list any interest, direct or indirect, in a business, firm, partnership, entity, or other organization

20. With respect to any Identified Party, list all income received within the past 72 months from any source not addressed by your previous answers in this questionnaire.

21. With respect to any Identified Party, list each individual item of personal property (including but not limited to jewelry, art and collectibles, motor vehicles, watercraft, and aircraft) with a value of $5,000 or more

22. With respect to any Identified Party, provide details below for all credit cards held in the name of the Identified Party

23. With respect to any Identified Party, list each creditor of $5,000 or more (whether secured or unsecured)

24. With respect to any Identified Party, list all judgments entered against the Interested Party

Dated:    August 6, 2024
          Syosset, New York

                        Respectfully submitted,

                        THE WEINSTEIN GROUP, P.C.

                        By:
                        LLOYD J. WEINSTEIN, Esq.
                        (Rule §130-1.1a) (NYS Tech Law §304(2))
                        6800 Jericho Turnpike, Suite 112W
                        Syosset, New York 11791
                        Telephone: 516-802-5330
                        Facsimile: 516-802-5332
                        ljw@theweinsteingroup.net

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

THE LAW OFFICES OF ERICA T. YITZHAK AND
ERICA T. YITZHAK, ESQ. P.C.,

**Case: 2:24-cv-03552-RER-SIL**

Petitioner,

-against-

**RESPONSE TO PETITIONERS'
REQUEST FOR PRODUCTION
OF DOCUMENTS**

TROY LAMBE, MAX DIVERSIFIED INC.,
SUNRAY SOLAR INC., AND PAUL VERNER,

Respondent(s),
--------------------------------------------------------------------X

Respondent PAUL VERNER (hereinafter "Respondent") by its attorneys LEWIS

BRISBOIS BISGAARD & SMITH LLP, hereby responds to Petitioner's Request for Production

of Documents dated August 6, 2024, as follows:

## **GENERAL OBJECTIONS**

1.      Respondent objects to the Definitions and Instructions set forth in Petitioners'

Requests insofar as they seek to impose requirements to provide discovery inconsistent with,

and/or to the extent not required by, the Federal Rules of Civil Procedure or this Court's Local

Civil Rules.

2.      Respondent objects to the Definitions and Instructions set forth in Petitioners'

Requests to the extent that they are overly broad, unduly burdensome, vague and/or ambiguous.

3.      Respondent objects to Petitioners' Requests to the extent that they are overly broad,

unduly burdensome, vague, ambiguous, and/or exceed the permissible scope of discovery pursuant

to Local Rule 26.3.

4.      Respondent objects to Petitioners' Requests to the extent that they fail to define a

reasonable and relevant time period.  Respondent' Responses will be limited to the relevant time

period between 2016, when Petitioners retained the Respondent and 2023, when Respondent ceased representing Petitioner.

5.     Respondent objects to Petitioners' Requests to the extent that they seek documents that are neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.

6.     Respondent objects to Petitioners' Requests to the extent that they seek documentation that is not within its possession, custody, control, or otherwise is not available to or accessible to it.

7.     Respondent objects to Petitioners' Requests to the extent they seek documentation that is privileged, confidential, proprietary and/or contains personal information concerning individuals and entities that are not parties to this action.  To the extent that the Petitioners' Requests seek documents prepared in anticipation of litigation or for trial, or which are otherwise protected as set forth above, Respondent will not produce such information and/or documents.

8.     Respondent objects to Petitioners' Requests to the extent that they seek documentation which will be the subject of expert testimony. Such documentation is protected by the attorney work-product doctrine, and therefore the Requests have been answered exclusive of such information.

9.     Respondent objects to Petitioners' Requests to the extent that they seek documentation from any individuals and/or entities that Petitioners have not named as parties to this action.

10.    Respondent objects to Petitioners' Requests to the extent that they seek documentation that is within Petitioners' possession, custody, control, or to which is otherwise equally accessible to Petitioner, as such requests are unduly cumulative and duplicative.

11.     Respondent' Responses are made solely for the purpose of this action.  Respondent'
Responses are subject to all objections as to competence, relevance, materiality, propriety and
admissibility, and any and all other objections and grounds which would require the exclusion of
any response or document contained herein if the Requests were asked of, or any statements
contained therein were made by a witness present and testifying at court, all of which objections
and grounds are reserved and may be interposed at the time of trial.  By producing or agreeing to
produce any document, Respondent does not necessarily concede that such document is relevant
to this action or admissible in evidence.

12.     Inadvertent production or disclosure of any information or of any document(s)
containing information which is confidential, privileged, was prepared in anticipation of litigation
or for trial, or is otherwise immune from discovery, shall not constitute a waiver of any such
privilege or of any ground for objection to discovery with respect to such information or document,
or the information contained therein, or of his right to objects to the use of any such document
during any subsequent proceeding herein.

13.     Respondent reserves the right to supplement and/or amend the within Responses
up to and including the time of trial.

14.     Respondent reserves the right to cite, at a later date, documents and/or other facts
not referred to herein in support of its contentions.  Respondent reserves this right: (1) in light of
the fact that this matter is in the preliminary stages of discovery; and (2) because analysis and
consideration of the information, documentation and issues in this matter, performed after the date
of these Responses, may identify additional documents and/or other facts which support
Respondent' contentions in this matter.

15.     Each of the General Objections is incorporated by reference in each of the
Responses set forth below. Respondent states that the specific inclusion of a General Objection in

a Response shall not be deemed a waiver of any other General Objections with respect to said Demand.

## SPECIFIC OBJECTIONS AND RESPONSES

1.       Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Troy Lambe.

**Response:**

**Respondent objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

2.       Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Janet Lambe.

**Response:**

**Respondent objects to Request No. 2 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously. Respondent further objects to this request because it seeks the production of documents which contain proprietary business information, other confidential information, and/or personal information concerning individuals and entities**

**that are not parties to this action. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

3.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Max Diversified, Inc.

**Response:**

**Respondent objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously. Respondent further objects to this request because it seeks the production of documents which contain proprietary business information, other confidential information, and/or personal information. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

4.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money received from or for the benefit of Sunray Solar, Inc.

**Response:**

**Respondent objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously. Respondent further objects to this request because it seeks the production of documents which contain proprietary business information, other**

**confidential information, and/or personal information. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

5.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money sent to or for the benefit of Troy Lambe.

**Response:**

**Respondent objects to Request No. 5 on the grounds that it is entirely duplicative as Request No. 1. Please see response to Request No. 1.**

6.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money sent to or for the benefit of Janet Lambe.

**Response:**

**Respondent objects to Request No. 6 on the grounds that it is entirely duplicative as Request No. 2. Please see response to Request No. 2.**

7.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications and other documents concerning money sent to or for the benefit of Max Diversified, Inc.

**Response:**

**Respondent objects to Request No. 7 on the grounds that it is entirely duplicative as Request No. 3. Please see response to Request No. 3.**

8.     Bank statements, bank information, wiring instructions, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other

communications and other documents concerning money sent to or for the benefit of Sunray Solar, Inc.

**Response:**

**Respondent objects to Request No. 8 on the grounds that it is entirely duplicative as Request No. 4. Please see response to Request No. 4.**

9.     Evidence of payment(s) made to PAUL VERNER and/or an entity under his control, for legal fees or other services to any of Troy Lambe, Janet Lambe, Max Diversified, Sunray Solar. The foregoing demand response shall include copies of bank statements, wire transfer information, ACH instructions, accountings, ledgers, calculations, spreadsheets, emails, letters, text messages or other communications.

**Response:**

**Respondent object to Request No. 9 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously.**

10.     True copies of bank statements for the Escrow, IOLA, IOLTA, Special, Trust or other similar attorney account for the time period January, 2015 to the present day, of Paul W. Verner, individually and of Verner Simon.

**Response:**

**Respondent object to Request No. 10 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously. Furthermore, Respondent is not searching for or producing any responsive documents.**

11. Documents which support or refute the allegations made in the Affidavit of Troy Lambe dated May 29, 2020, filed at NYSCEF 150, and specifically at paragraph 10 thereof which reads, in part: "Mr. Verner is protected because he continues to hold by my calculations in escrow a substantial amount of monies (approx. $94,500.00-$418,000.00) from the Federal Court and Yitzhak settlements of $1.6 Million Dollars combined, which he will maintain until the fee dispute is resolved."

**Response:**

**Respondent objects to Request No. 11 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refers Petitioners to Respondent Verner's Reply Affirmation filed on June 8, 2020 which refutes Mr. Lambe's allegations made in his affidavit. (Kahlon, et. al. v. Yitzhak, et. al., Index No. 601659/2016, Doc. No. 155). Annexed hereto as Exhibit A is a copy of the Respondent Verner's Reply Affirmation.**

12. Documents that concern Respondent's written representation on February 14, 2024 that "monies were paid to me [Verner]" including an accounting of monies referenced, how the same were sent and received and how the same were used, if they were.

**Response:**

**Respondent object to Request No. 12 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

13.   Documents that concern Respondent's written representation on February 14, 2024 that "those funds were depleted" including an accounting of monies referenced, how the same were received and how the same were used, if they were.

**Response:**

**Respondent object to Request No.  12 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

14.   Documents supportive of the third affirmative defense set forth in the Answer of the Respondent. Document 9.

**Response:** (Doctrine of waiver, consent, acquiescence, and/or ratification)

**Respondent objects to Request No. 14 on the grounds that it is premature, vague, ambiguous, overbroad, not limited in time, overbroad, and to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it seeks information that is not within Respondent's possession, custody, or control.**

**Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously produced for documents responsive to this request. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

15.   Documents supportive of the fourth affirmative defense set forth in the Answer of the Respondent. Document 9.

**Response:** (contributory or comparative negligence and/or culpable conduct)

Respondent objects to Request No. 15 on the grounds that it is premature, vague, ambiguous, overbroad, not limited in time, overbroad, and to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it seeks information that is not within Respondent's possession, custody, or control. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.

Subject to and without waiving the foregoing objections, Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.

16. Documents supportive of the seventh affirmative defense set forth in the Answer of the Respondent. Document 9.

**Response:**

Respondent objects to Request No. 16 on the grounds that it is premature, vague, ambiguous, overbroad, not limited in time, overbroad, and to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, to the extent there is another more practical method of obtaining discovery, such as depositions regarding facts within the knowledge of individuals identified, and to the extent that it seeks information that is not within Respondent's possession, custody, or control. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.

Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously produced for documents responsive to this request. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.

17. Documents supportive of the eighth affirmative defense set forth in the Answer of the Respondent. Document 9.

**Response:**

Respondent objects to Request No. 17 on the grounds that it is premature, vague, ambiguous, overbroad, not limited in time, overbroad, and to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, to the extent there is another more practical method of obtaining discovery, and to the extent that it seeks information that is not within Respondent's possession, custody, or control. In

the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.

Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously produced for documents responsive to this request. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.

18. Documents supportive of the eleventh affirmative defense set forth in the Answer of the Respondent. Document 9.

**Response:**

Respondent objects to Request No. 18 on the grounds that it is premature, vague, ambiguous, overbroad, overbroad, and to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, to the extent there is another more practical method of obtaining discovery, and to the extent that it seeks information that is not within Respondent's possession, custody, or control. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.

Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously produced for documents responsive to this request. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.

19. Documents supportive of the first paragraph of Declaration of Paul W. Verner dated July 25, 2024.

**Response:**

Respondent object to Request No. 19 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously.

20.     Documents supportive of the third paragraph of Declaration of Paul W. Verner dated July 25, 2024.

**Response:**

**Respondent object to Request No. 20 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, a copy of the check is annexed hereto as Exhibit B.**

21.     Documents supportive of the seventh paragraph of Declaration of Paul W. Verner dated July 25, 2024.

**Response:**

**Respondent object to Request No. 21 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously.**

22.     Documents supportive of the eleventh paragraph of Declaration of Paul W. Verner dated July 25, 2024.

**Response:**

**Respondent objects to Request No. 22 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.**

**Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously.**

23. Copies of any accounting concerning money received and distributed concerning Petitioners herein.

**Response:**

**Respondent objects to Request No. 23 on the grounds that it is premature, vague, ambiguous, overbroad, overbroad, and to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, to the extent there is another more practical method of obtaining discovery, and to the extent that it seeks information that is not within Respondent's possession, custody, or control. Respondent further objects to the extent that they seek documentation that is within Petitioners' possession, custody, control, or to which is otherwise equally accessible to Petitioner, as such requests are unduly cumulative and duplicative. Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

24. Copies of any ledgers concerning money received and distributed concerning Petitioners herein.

**Response:**

**Respondent object to Request No. 24 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Respondent further objects to the extent that they seek documentation that is within Petitioners' possession, custody, control, or to which is otherwise equally accessible to Petitioner, as such requests are unduly cumulative and duplicative.**

**Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously. Respondent will produce additional relevant responsive documents in his possession, custody, or control, if same exist and can be located.**

25. Documents supportive of the seventeenth paragraph of Declaration of Paul W. Verner dated July 25, 2024.

**Response:**

Respondent objects to Request No. 25 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously.

26. Documents supportive of the eighteenth paragraph of Declaration of Paul W. Verner dated July 25, 2024.

**Response:**

Respondent objects to Request No. 26 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is protected by the attorney-client privilege, work product doctrine, and as material prepared for litigation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving the foregoing objections, Respondent refer Petitioner to the documents previously.

27. Documents supportive of the nineteenth paragraph of Declaration of Paul W. Verner dated July 25, 2024.

**Response:**

Respondent objects to Request No. 27 on the grounds that it is overbroad, unduly burdensome, vague, ambiguous as to time and scope, assumes facts not in evidence, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving the foregoing objections, Respondent refers Petitioners to the documents previously.

**PLEASE TAKE FURTHER NOTICE,** that the Respondent reserves the right to amend and/or supplement this response at any time up to and including the time of the trial of this matter should additional material become available.

Dated: New York, New York
       August 16, 2024

                                  **LEWIS BRISBOIS BISGAARD &**
                                  **SMITH LLP**

                                  _____*/s/ Grace Song*_____
                                  By: Grace Song, Esq.
                                  Erin O'Leary, Esq.
                                  *Attorneys for Respondent*
                                  PAUL VERNER
                                  77 Water Street, Suite 2100
                                  New York, New York 10005
                                  Tel: (212) 232-1408
                                  Email:  erin.oleary@lewisbrisbois.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

THE LAW OFFICES OF ERICA T. YITZHAK AND     **Case: 2:24-cv-03552-RER-SIL**
ERICA T. YITZHAK, ESQ. P.C.,

                    **RESPONSE TO PETITIONERS'**
                Petitioner,     **INTERROGATORY DEMANDS**

      -against-


TROY LAMBE, MAX DIVERSIFIED INC.,
SUNRAY SOLAR INC., AND PAUL VERNER,

                Respondent(s),
-----------------------------------------------------------------------X

      Respondent PAUL VERNER (hereinafter "Respondent") by its attorneys LEWIS

BRISBOIS BISGAARD & SMITH LLP, hereby responds to Petitioner's Interrogatory Demands

dated August 6, 2024, as follows:

## GENERAL OBJECTIONS

      1.     RESPONDENT incorporates each of the general objections set forth herein as to

each separate request set forth in Petitioners' First Set of Interrogatories.

      2.     RESPONDENT objects to each and every Interrogatory to the extent that they

require the disclosure of matters protected by the attorney-client privilege, work-product doctrine

or any other applicable privilege, restriction, immunity or protection from discovery, including but

not limited to the protection provided in the Federal Rules of Civil Procedure and Federal Rules

of Evidence, all of which are herein invoked and asserted.

      3.     RESPONDENT objects to each and every Interrogatory to the extent that they are

vague, ambiguous, and ill defined.

      4.     RESPONDENT objects to providing information and responses to each

Interrogatory to the extent that the compilation of such information would be unduly burdensome,

oppressive, or require unreasonable investigation on the part of Respondent.

5.　　RESPONDENT objects to Petitioners' Interrogatories to the extent that said discovery is overly broad, unduly burdensome or not reasonably calculated to lead to the discovery of admissible evidence.

6.　　RESPONDENT objects Petitioners' Interrogatories to the extent they seek information which is properly the subject of expert discovery. RESPONDENT reserves the right to utilize all such expert discovery at the time of trial, including information not referenced in these responses.

7.　　RESPONDENT objects to each and every Interrogatory to the extent that they are pre-mature.

8.　　RESPONDENT objects to each and every Interrogatory to the extent that they request proprietary information.

9.　　Investigation of facts and discovery of documents and other information relating to the claims at issue in this action are continuing. Respondent's response to Petitioners' First Set of Interrogatories is based only upon such information and documents as are available to RESPONDENT at the time of this response. To the extent that further investigation may disclose additional information that has been requested in these requests, such responsive information will be provided. RESPONDENT reserves the right to modify and/or supplement any and all of its responses to these document requests as additional information is obtained or becomes known to RESPONDENT.

10.　　RESPONDENT objects to each and every Interrogatory to the extent that Petitioners fails to identify the party, parties, individuals, corporations and actions to which each demand refers.

11.　　RESPONDENT objects to each and every Interrogatory to the extent that they

request attorney work product.

12. RESPONDENT objects to each and every Interrogatory to the extent that it requests materials prepared in anticipation of litigation.

## SPECIFIC OBJECTIONS AND RESPONSES

With respect to each of (a) Troy Lambe; (b) Janet Lambe; (c) Max Diversified and (d) Sunray Solar, Inc. ("Identified Party"), provide the following information:

1. Full name; Known alias or alternate name used.

**Response: Respondent objects to this demand on the grounds that it seeks information beyond the Respondent's knowledge and possession, and it is overbroad, vague, and calls for speculation. Subject to and without waiving the foregoing objections, Respondent is not aware of any other name used by the Identified Parties.**

2. Current address and length of time at that address.

**Response: Respondent objects to this demand on the grounds that it seeks information beyond the Respondent's knowledge and possession, and it is overbroad, vague, and calls for speculation. Subject to and without waiving the foregoing objections, Respondent lists the known addresses of the Identified Parties:**

(a) Troy Lambe
5678 NW Athens Ct
Port Saint Lucie, FL 34986

246 S. Cooks Bridge Road,
Jackson, New Jersey 08527

(b) Janet Lambe
5678 NW Athens Ct
Port Saint Lucie, FL 34986

246 S. Cooks Bridge Road,
Jackson, New Jersey 08527

(c) Max Diversified, Inc.
5678 NW Athens Ct
Port Saint Lucie, FL 34986

246 S. Cooks Bridge Road,
Jackson, New Jersey 08527

(d) Sunray Solar, Inc.
   5678 NW Athens Ct
   Port Saint Lucie, FL 34986

   246 S. Cooks Bridge Road,
   Jackson, New Jersey 08527

3. Current occupants of any address provided in 2, above.

**Response: Respondent objects to this demand on the grounds that it seeks information beyond the Respondent's knowledge and possession, and it is overbroad, vague, and calls for speculation. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.**

4. Whether the Identified Party owns or rents any property and the amount of any rent.

**Response: Respondent objects to this demand on the grounds that it seeks information beyond the Respondent's knowledge and possession, and it is overbroad, vague, and calls for speculation. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.**

5. The social security or tax identification number of any Identified Party.

**Response: Respondent objects to this demand on the grounds that it seeks information beyond the Respondent's knowledge and possession, and it is overbroad, vague, and calls for speculation. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.**

6. The occupation or profession or business of any Identified Party.

**Response: Respondent objects to this demand on the grounds that it seeks information beyond the Respondent's knowledge and possession, and it is overbroad, vague, and calls for speculation. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.**

7. The name/identity of any owners of Max Diversified and/or Sunray Solar, Inc..

**Response: Respondent objects to this demand on the grounds that it seeks information beyond the Respondent's knowledge and possession, and it is overbroad, vague, and calls for speculation. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time.**

**Subject to and without waiving the foregoing objections, Troy Lambe was the owner of Max Diversified and Sunray Solar, Inc. Respondent is not aware if the current ownership of the entities has changed.**

8.  The name/identity and street location of any bank utilized by the Identified Party.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

9.  The full routing and account number for any bank account held in whole or in part by any of the Identified Party.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

10. The current balance of any account at any bank of any Identified Party.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

11. With respect to any Identified Party, list all foreign and/or U.S. bank, brokerage, and investment accounts (including but not limited to savings, checking, money market, mutual funds, cryptocurrency, certificates of deposit, and credit union accounts).

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

12. With respect to any Identified Party, list all U.S. retirement accounts (including but not limited to IRAs, deferred compensation, Keoghs, pension, and 401(k) accounts), as well as annuities.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

13. With respect to any Identified Party, provide the total market value of all U.S. government-issued bonds, notes, and bills (e.g., savings bonds, municipal bonds, treasury notes).

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

14. With respect to any Identified Party, list all U.S. stocks that are not held in a brokerage account, and all bonds that are not government-issued.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

15. With respect to any Identified Party, provide details below if any has direct control or ownership of foreign financial businesses, foreign bank accounts, or other foreign financial interests (including but not limited to stocks, annuities, retirement accounts, government-issued bonds, notes, and bills, investments, or ownership of corporate entities).

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

16. With respect to any Identified Party, provide details below if it has a foreign interest that someone else controls on its behalf (including but not limited to stocks, annuities, retirement accounts, government-issued bonds, notes, and bills, investments, or ownership of corporate entities).

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

17. With respect to any Identified Party, provide details if it is owed money (e.g., personal loans, promissory notes).

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

18. With respect to any Identified Party, provide details of any pension or retirement benefit collected.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

19. With respect to any Identified Party, list any interest, direct or indirect, in a business, firm, partnership, entity, or other organization.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

20. With respect to any Identified Party, list all income received within the past 72 months from any source not addressed by your previous answers in this questionnaire.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further,**

**this response is best directed at the Identified Parties.**

21. With respect to any Identified Party, list each individual item of personal property (including but not limited to jewelry, art and collectibles, motor vehicles, watercraft, and aircraft) with a value of $5,000 or more.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

22. With respect to any Identified Party, provide details below for all credit cards held in the name of the Identified Party.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

23. With respect to any Identified Party, list each creditor of $5,000 or more (whether secured or unsecured).

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

24. With respect to any Identified Party, list all judgments entered against the Interested Party.

**Response: Respondent objects to this demand on the grounds that it is overbroad, vague, and calls for speculation, and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In the absence of completion of pre-trial discovery and disclosure, including but not limited to examinations before trial, Respondent does not possess sufficient information to fully respond to this demand at this time. Further, this response is best directed at the Identified Parties.**

**WHEREFORE,** Respondent reserves the right to supplement or amend this response if, and when, additional information becomes available.

Dated: New York, New York
      August 16, 2024

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

\_\_\_\_\_*/s/ Grace Song*_____
By: Grace Song, Esq.
Erin O'Leary, Esq.
*Attorneys for Respondent*
PAUL VERNER
77 Water Street, Suite 2100
New York, New York 10005
Tel: (212) 232-1408
Email: erin.oleary@lewisbrisbois.com

# EXHIBIT A

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| **YOSSEF KAHLON a/k/a JOSSEF KAHLON and ATLAS SOLAR HOLDINGS, LLC,**<br><br>**Plaintiffs,**<br><br>- against -<br><br>**ERICA T YITZHAK, THE LAW OFFICES OF ERICA T. YITZHAK and ERICA T. YITZHAK, ESQ., P.C.,**<br><br>**Defendants.** | **Index No. 601659/2016**<br><br><br>**REPLY AFFIRMATION IN SUPPORT OF ORDER TO SHOW CAUSE FOR AN ORDER RELIEVING DEFENSE COUNSEL** |

PAUL W. VERNER, an attorney duly admitted to practice law before this court affirms the following facts to be true under penalty of perjury:

1.     I am the attorney for the Yitzhak Defendants in this matter.  This Reply Affirmation is submitted in further support of my motion to be relieved as counsel for the Yitzhak Defendants.

**Introduction**

2.     The Yitzhak Defendants and the non-party Lambe indemnitors (the clients) insufficiently plead an absence of conflict and irreconcilable differences.  They also unsuccessfully attempt to defend the motion by arguing, without presenting any independently verifiable evidence, that the motion to be relieved concerns only monetary fee issues/disputes.  Even on the issue of unpaid fees, as shown below, then opposing clients misapply the controlling law or otherwise gloss over material

fact issues demonstrating that it is impossible for the attorneys to continue representing the Yitzhak Defendants in this action.

3.       The manner in which the movant came to represent the Yitzhak Defendants clarifies certain of the movant's rights as an attorney as well as the rights of the parties to this litigation.  The procedural history demonstrates that the opposing clients' case law is inapplicable or not controlling. A brief recap of the history of the many litigations which preceded this matter may therefore be helpful.

### Procedural History Giving Rise to The Movant's Representation of the Yitzhak Defendants

4.       I have been litigating multiple cases related to the Plaintiffs (the Yossef Kahlon parties) and the Yitzhak Defendants on behalf of the Lambe parties since 2014.  No one denies that my representation of Lambe and his companies has been very effective.

5.       The cases started when, in 2012, Yossef Kahlon promised Mr. Troy Lambe that Kahlon would "put Lambe (and his companies) out of business".   Ever since, regardless of the position in which Kahlon finds himself in the multiple  litigations, Kahlon has engaged in a scorched earth campaign against Lambe.  The tenacity of Mr. Kahlon and his serial litigations has made my work onerous and fees substantial as described below.

6.       I submit that because of the indemnification contract between Yitzhak and Lambe, this action is frankly just another in the serial stream of litigations designed to get at Lambe.

7.       Unfortunately, Kahlon ran into a serious obstacle when I took a $1 Million jury verdict and judgment in February 2016 in federal court in Lambe's case against Kahlon (the "Federal Action") for his tortious interference and destruction of Lambe's solar energy business.

8.      Kahlon of course supports my departure from the litigation.   *See*, ECF# 142-146.  It is not unusual for the opposing party to embrace a rift between another party and their attorneys.

9.      What is clearly unique about this matter is the relationship arising out of the Federal Action between the defendants (the Yitzhak parties), their indemnitors (the Lambe parties) and the moving attorneys.  As set forth below, this unique relationship not only underscores the extent of the conflict that still exists (despite Ms. Yitzhak's and Mr. Lambe's  unsupported allegations to the contrary) but it renders much of the case law cited by the opposition inapplicable.

**The Federal Action Settlement with Yitzhak**

10.     The Yitzhak Defendants were once Kahlon's attorneys and were alleged in Lambe's federal Action against Kahlon and Yitzhak to have been responsible for issuing three letters to Lambe's business financiers in 2013 which resulted in those financiers terminating all business with Lambe and his companies which, as Kahlon promised he would do, immediately put Lambe out of business.

11.     In the middle of Yitzhak being cross-examined by me as a co-defendant, attorney Yitzhak, determined to settle with plaintiff Lambe.  Yitzhak tendered her remaining CNA insurance policy proceeds in exchange for a release and an indemnification from Lambe against any potential malpractice action which had been threatened against her in the Federal Action by Kahlon.

12.     Interestingly, Lambe would have settled with all defendants including Kahlon in the Federal Action in exchange for the Yitzhak CNA policy proceeds had Kahlon in his negotiations not *insisted that he share with Lambe some of those CNA proceeds.*  Kahlon threatened that he would sue Yitzhak (*albeit* quite late in the day) for malpractice (the threat was taken as serious by Yitzhak's defense attorneys in the Federal Action).   Yitzhak's counsel therefore demanded that any settlement would

require that Lambe release all *defendants including Kahlon*. At the middle stage of these negotiations, which were occurring while the trial proceeded daily, Lambe actually agreed to a full release of Kahlon and his companies as well as the Yitzhak defendants if the rest and remainder of the self-liquidating CNA policy were tendered by Yitzhak.

13.     It is at this juncture Kahlon actually refused the offer of a release of him and rather demanded that he actually share with Lambe in the CNA/Yitzhak policy proceeds. Thus, Kahlon was in fact the instrument of his own demise in the Federal Action as seen below.

14.     On the sixth day of trial, bloodied by effective cross-examination in front of the jury, and scheduled to return to the witness stand the next day, attorney Yitzhak instructed her defense counsel hired by CNA to settle the case regardless of Kahlon's threats of malpractice and his demand to share in the CNA policy proceeds.

15.     Ultimately, after further negotiations between me and the Yitzhak defense counsel, and with Lambe informed every step of the way, all the CNA policy proceeds were tendered to Lambe in exchange for dismissal of all claims made by Lambe against Yitzhak as Kahlon's co-defendants/attorneys, so long as Lambe agreed to indemnify Yitzhak against the potential legal malpractice lawsuit Kahlon had threatened. This settlement was then placed upon the record in the federal trial and both Yitzhak and Lambe affirmed the terms of the settlement on the record. See, Verner Affirmation (ECF#120), **Exhibit B**.

16.     One term agreed between Yitzhak and Lambe was that I would be Yitzhak's defense counsel in any suit brought later by Kahlon, which suit seemed would be stale and frivolous. Lambe would pay my fees. Lambe would indemnify Yitzhak in the unlikely event that Kahlon won the case. Appeals were covered by the indemnity.

17.      Thus, Lambe's  previous sworn enemy, attorney Yitzhak, are now bosom buddies in their efforts to keep me in the traces of unpaid employment defending Kahlon's current and hopefully last lawsuit suit which is effectively against Lambe.


**The Federal Judgment Against Kahlon Spawns Numerous Lawsuits**

18.      Kahlon's extremely poor judgment of his exposure in the Federal Action, the errors of his defense counsel, the bold move by Lambe to indemnify Yitzhak and Kahlon's stubborn, piggish refusal to accept a release when Yitzhak offered to tender her policy, resulted in a $1 million judgment by the jury against Kahlon the next day in the Federal Action.[1]

19.      Ever since, Kahlon has been scheming and litigating in a desperate series of futile lawsuits to recover his $1 million.[2] Unfortunately for Lambe, Yitzhak and all other parties in Kahlon's subsequent serial lawsuits, Kahlon has caused excessive legal work and fees by his litigation efforts, most of which bordered on being frivolous.

20.      In fact, so pernicious and tenacious is Kahlon in his never-ending campaign against Lambe that just last week the Second Department rightly rejected Kahlon's appeal of Justice Driscoll's well-reasoned dismissal of Kahlon's suit against Yitzhak's *former defense counsel*, Michael DeSantis, Esq. and Kaufman Dolowich Voluck, LLP in *Kahlon et al., v. DeSantis et al.*, Index No. 609252/2017 (a/k/a Kaufman II).  **Exhibit AA**.  (**Exhibits A-Z** are attached to Verner's initial Affirmation in Support, ECF## 120-132).

---

[1]      Part of that award was comprised of punitive damages.
[2]      Kahlon cash collateralized a $1 million surety bond pending his appeal which was lost on all issues presented by him.

21.     The Kaufman II lawsuit against Yitzhak's attorneys in the Federal Action was handled by me for Lambe as well as at least five (5) other cases commenced by Kahlon after the Federal Action. As mentioned, the appeal of the Federal Action was handled as well.  A summary list of the cases can be found in **Exhibit BB** attached to this Reply Affirmation which is from my prior Motion to Dismiss in Kaufman II compiling exhibits.  They are:

- *Lambe et al. v. Kahlon/Yitzhak et al*., 13-cv-3126, USDC, EDNY. (the Federal Action);

- Second Circuit appeal (Judgment affirmed September 1, 2017) and Mandate Issued September 22, 2017);

- *Kahlon et al v. Continental Casualty et al*., S.C. Nassau County, Index No., 601655/2016 – removed to the U.S.D.C., E.D.N.Y. (16-cv-2239)[3];

- *Kahlon et al v. Yitzhak et al*., (this action ) S.C. Nassau County, Index No.: 601659/2016;

- *Kahlon et al v. Kaufman DeSantis et al.*, S.C. Nassau County, Index No.: 607456/2016 (a/k/a Kaufman I); and

- Kahlon also sued Lambe for defamation in New Jersey state court due to comments made on a defunct website and I defended that lawsuit as well. *Kahlon v. Lambe et al*, Superior Court of New Jersey, Ocean County,  OCN-L-003120-17.

22.     All of these lawsuits were litigated, defended, or otherwise successfully handled by me from 2014 to the present time, a period of six years of nearly constant and many times, intense, litigation.

---

3       Yes,  Kahlon found an New York attorney willing to sue even *Yitzhak's legal malpractice insurance carrier*.

23.    The fact that I have derived  substantial legal fees from my labor in the trenches of four different courts during my representation of Lambe, Lambe's  companies and now the Yitzhak Defendants here, is simply not remarkable at all.  Without casting any aspersions regarding the difficulties presented by the Lambe parties, certain of the defense counsel encountered along the way, or of Mr. Kahlon and his penchant for serial litigation, to be blunt, I have earned every dollar paid as well as those which remain unpaid.

24.    I will address the issue of legal fees in more detail again below responding to the conclusory allegations of Mr. Lambe on that issue.  Suffice to say at this point in my Reply that it is indisputable that after winning the Federal Action and approximately $1.6 million for Mr. Lambe from the Yitzhak and Kahlon parties in 2016, effectively giving him the ability to restart a business, I also successfully appealed that victory, while simultaneously defending an attachment of Kahlon's own surety bond in this Court (brought by another group of Kahlon's misguided attorneys on wildly creative use of the facts) and simultaneously/subsequently litigated three other lawsuits brought by Kahlon to dismissals.  My fees that have been paid to date were hard earned and reasonable.  I will stand on my reasonable billing invoices before any tribunal if and when needed.[4]

### Standing/Jurisdiction

25.    Although non-parties/indemnitors, Troy Lambe, Max Diversified, Inc. and Sunray Solar, Inc., have filed motion papers in this case opposing the instant motion, they have not appeared formally as parties in this action.  Nor have they commenced any other action at law or equity to

---

[4]    I have refrained from commencing a lawsuit against Mr. Lambe and his companies until the issues pertaining to my withdrawal are determined by this Court.  However, I have not (and will not) waive my rights to litigate the issue of fees owed.

enforce any contract or other rights which they might have asked to be consolidated or joined with this case.

26.     Accordingly, the movant suggests that the filings of the Lambe parties may present an issue regarding lack of subject matter jurisdiction to the Court which may need to be resolved.  I take no position on the issue but recognize a potential problem from several points of view including one of appellate review.

27.     If the Lambe Affidavit is presented merely in his role as a witness for the Yitzhak defendants, then it appears it is in any event insufficient to controvert my moving papers on the issues of client communications (irreconcilable differences/difficulties with the clients), conflicts of interest presented in the representation of Yitzhak given Lambe's stated positions on indemnity or my unpaid fee bills.

## Irreconcilable Conflicts

28.     Without supporting evidence, both Yitzhak and Lambe (the witness for the Yitzhak Defendants) urge this Court to determine that there are no irreconcilable conflicts in the continued representation of Yitzhak by Verner.

29.     However, the unsupported allegation of "no conflict" made by Yitzhak and Lame [*See*, Yitzhak Affirmation, ¶¶6-8; Lambe Affidavit, ¶¶5-7] are conclusory allegations without any evidence[5].  Such conclusory allegations do not eliminate the basis for this Court to determine the existence of a conflict as alleged by the movant Verner.

---

5       Certainly, attorneys Yitzhak and Spinnell are aware of how to file and deliver confidential communications to the Court on a motion.  Several of my Exhibits were not published and served by electronic mail on either Yitzhak or Lambe respectively with hard copies delivered to the Court to protect confidential and privileged communications.  If

30.     Mr. Lambe states there is no conflict, however, Lambe does not, for example, affirm his contractual duty of indemnification anywhere in his Affidavit.

31.     Although Mr. Lambe affirms that he remains responsible for indemnity, he in actuality only assumes responsibility for legal fees/expenses. Yet, he has clearly refused, and continues to refuse in his affidavit, any obligation to continue to pay Verner.

32.     Further, Ms. Yitzhak fails to address whether Mr. Lambe is responsible for indemnifying Yitzhak against any adverse judgments or appeals in this case. *See*, Yitzhak Affirmation, *passim*.

33.     While attorney Yitzhak claims Mr. Lambe has, in an oral conversation, stated to Yitzhak that Lambe is responsible for "everything", Mr. Lambe states at paragraph 4 of his affidavit that he has been previously told by Verner that Lambe's indemnity obligation was "limited". In fact, on this point, Mr. Lambe's exact position is rather unclear.

34.     However, what remains clear is that there is a factual conflict and thus an ethical conflict in Verner's continued representation of the inherent disagreement between Yitzhak and Lambe over the scope of the indemnity obligations of the Lambe indemnitors.

35.     The conflict waivers letter between Yitzhak and Lambe are premised on their uniform agreement on the scope of the Lambe indemnity obligations. *See*, **Exhibit CC**.

### I Am NOT A Party to The Indemnity Agreement

36.     Both Yitzhak and Lambe imply that I am somehow an <u>obligated</u> party under their agreement to settle the federal Action and for Lambe to indemnify Yitzhak. *See*, Yitzhak Affirmation, ¶4 and 5; Lambe Affidavit, ¶¶5-7 ("Verner seeks to void his obligation under the Settlement Agreement").

---

there were any settlement authority, for example, delivered to me by Lambe and Yitzhak, then those communications should have been made part of the Court's record and served upon me. They were not.

37.     The record in the Federal Action and as reviewed by this Court are clear.  See, Verner

Affirmation, **Exhibit A** (Order Denying Disqualification of Verner);  **Exhibit B**, transcript pp. 905-

09 and Stipulation and Settlement Agreement.   Nowhere is there any wording indicating that I have

an "obligation under the Settlement Agreement" to defend Yitzhak if I am not properly paid by

Lambe to do so.  Rather the Settlement Agreement states:

> LAMBE expressly agrees that the defense of any such claim against the YITZHAK
> DEFENDANTS shall be handled by LAMBE's counsel Paul Verner, Esq. and the
> law firm of Verner Simon. The YITZHAK DEFENDANTS agree to cooperate fully
> with LAMBE and Verner Simon in the defense of any such claim.

**Exhibit B**, Settlement Agreement, p. 5 of 11.

38.     The Retainer Agreement between the movant and the Lambe indemnifying parties and

Yitzhak made the paid service agreement clear as follows:

> First, as you know there was no initial retainer agreement in the case known as
> *Kahlon v. Yitzhak* - Index No. 601659/2016. That is because that case is being
> handled pursuant to the settlement agreement made in the *Lambe v Kahlon* federal
> litigation that went to verdict on February I, 2016. This letter now covers that work
> but there will not be any billing statement to Erica under that Index number. See
> below.

> Pursuant to the terms of the settlement made in federal court on or about January
> 29, 2016, the Lambe/Sunray parties will pay all legal fees and expenses and defend
> the Yitzhak parties against Kahlon's claims for negligence and legal malpractice.
> That is the Yitzhak Defense case.

> The latest case (I call it the Shotgun Case) is a claim that Erica intentionally
> breach a fiduciary duty to Kahlon arising from an alleged joint defense agreement in
> the federal litigation. These too are frivolous claims but they were not technically
> what Troy agreed to pay for when he agreed to indemnify Erica against the legal
> malpractice claims.

> Considering the fact, I suggest that in representing us all, and hopefully getting
> us all dismissed forthwith, I charge Erica and Troy 1/3 each of my billable hour. The
> remaining third is for my benefit.

My state court billing rate is $350 an hour (I charge $450 for complex federal litigation).  One third of that is $116.66. So, I would track my time and charge each of you that figure per hour.

I expect to get us all dismissed in the same set of motion papers.

Now there are motions I need to make to get the appeal bond released. Obviously that work is for Troy and my benefit alone as we are looking to protect the judgment won against Kahlon. Accordingly, although that work will appear on billing statements, Erica's portion will show N/C (no charge) for that work.

The remaining terms are standard for retaining attorney services and are contained to formalize the agreement between us. We have conflict letter in place as well.

…

### **PAYMENT OF FEES**

You have agreed to a billing rate of $350.00 per hour which shall be paid by the Lambes in the <u>Yitzhak Defense</u> case. In the <u>Shotgun Case</u>, the rate will be split into three or $166.66 per hour for work done for our mutual benefit - the Lambes, Verner and Yitzhak.

**Exhibit DD**, pp. 1-2, 3.

39.     Lambe's other Retainer Agreements with me also incorporated the following standard clause:

### **TERMINATION AND RIGHT TO CHARGING/RETAINING LIEN**

You are advised that if, in the judgment of this firm, we decide that there has been an irretrievable breakdown in the attorney-client relationship, *or a material breach of the terms of this retainer agreement*, we may decide to make application to the court in which your action is pending to be relieved as your attorneys. In such event, you will be provided with notice of the application and an opportunity to be heard. Should any fees be due and owing to this firm at the time of our discharge, we shall have the right, in addition to any other remedy, to seek a charging lien, i.e., a lien upon any award made to you as a result of settlement or judgment of the court and to retain the file until fees due are paid.

**Exhibit EE**, Retainer Agreement in Lambe's Defamation defense, p. 5 (emphasis added).

40.     The settlement made on the record in the Federal Action has been examined previously by this Court and is a matter of the law of this case. **Exhibit A**. I am clearly not a party to the agreement but merely the attorney that Yitzhak and Lambe chose together to handle the potential lawsuit threatened by Kahlon during settlement negotiations. While I accepted the requested employment as mutually agreed and chosen defense counsel, that acceptance has always been subject to the prompt payment of my invoices when they are presented to Mr. Lambe. *See*, Retainer Agreement and Conflict Letters addressed by this Court's prior Decision, **Exhibit A**, fn. 5. **Exhibits CC, DD** and **EE**.

41.     That settlement contained Lambe's obligation to indemnify Yitzhak in the case of adverse judgment and to pay all defense costs/fees to me, as the attorney chosen by both Lambe and Yitzhak.

### Legal Fee Issues

42.     It is clear that Mr. Lambe, who is a sophisticated businessman, understands that he is required to pay me for my services. He not only admits that in his Affidavit, but he obviously agreed to it in his Retainer Agreement quoted above. **Exhibit DD**.

43.     Mr. Lambe simply believes, without providing any substantiation, that he has paid me enough for all I have done and for all that may be expected of me in the remainder of this case. I obviously disagree and have documented my position with mathematical evidence while Mr. Lambe and attorney Spinnell appear content to throw mud to see if something sticks.

44.     Lambe has failed to submit any documents or evidence controverting my fee invoices *in this case* (or any of the others which are not germane) or any written agreement between Lambe and I about the highly imprecise "approx. $94,500 - $418,000" imaginary "escrow monies" (Lambe

Affidavit, ¶10).  Mr. Lambe's factual assertions make no logical sense in addition to being unsupported by any documents.  The Court should also determine that Lambe has no credibility on the financial issues because they are contradicted by documents.

45.     First, I am not sure how the Court is to believe that a businessman with those sums of money alleged to be held in "escrow" would have failed to inquire on their status for over two years.

46.     Second, Mr. Lambe's very serious charge of misconduct against me regarding "escrow" is an intentional misstatement, is defamatory and is merely designed to throw the hounds off the scent of the financial realities in this case.  The Court might compare in **Exhibit S**, at pp. 7-10, my Memo to Lambe dated May 1, 2018 (after the Kahlon Surety Bond was finally released to me for distribution).  There I asked for certain case "Retainers" for ongoing litigation including this one. In Lambe's return spreadsheet to me correcting figures, he labeled a column using the term "Escrow" over my four requested case Retainers.  There is absolutely no agreement to hold funds in "escrow" for Lambe and I am rather curious how attorney Spinnell allowed such charges in publicly filed papers without confirming escrow agreements.  Second, where I used the term "escrow" suggesting that Lambe leave $60,000 in my escrow account for the payment of certain collections cases I was handling, (*see*, **Exhibit S**, May 18, 2018 Memo, ¶2), Lambe rejected the suggestion and never set up that escrow with me (*see*, his reply and spread sheet regarding distribution of funds).  Had he not, a separate escrow agreement would have been written up and signed.

47.     The documentary evidence submitted with my Affirmation in Support establishes without doubt that it was only after repeated attempts to discuss scheduled settlement conferences, to obtain my settlement authority and to reaffirm Lambe's commitment to fully indemnify Yitzhak in November – December 2019 that finances arose as a third problem with Mr. Lambe.  It became clear

to me over the course of approximately 45 days of communications that Lambe was not going to make further payments to me. *See*, **Exhibits H-R**. This was unearthed when my request for a small payment towards what I informed Lambe was a certainly growing fee obligation was refused. **Exhibit H**, texts from 12/5 through 12/9 for example. It was clear in Lambe's last text to me that he thought he was done paying my legal bills. Further, Mr. Lambe's statement to me in text on 12/9 at 10:14 am clearly presented two issues which are directly contradictory to his and Yitzhak's affidavits stating that there are no conflicts between them. (I am unsure if my communications with Mr. Lambe on the issue of his indemnification obligations should now be publicized to Ms. Yitzhak where it is clear that Mr. Lambe's comments to me in text on December 9th contradict his supposed oral comments to her and his Affidavit made under penalty of perjury). By December 11, I informed Lambe I would get him his full accounting on all matters. **Exhibit I**.

48. At the time, Lambe spoke of his past payments and I was compelled to produce for him a full accounting of all his cases, including the instant matter, where the full extent of his indebtedness was communicated in great detail. **Exhibit J**.

49. My email and letter communication to Mr. Lambe and my detailed itemization of the fees due to me in this case (as well as others) was presented to this Court with my Affirmation in Support, **Exhibits I**, **S** (Invoice for this matter "Yitzhak Defense") and **T**.

50. In **Exhibit T**, the Court will see that I am responding in excruciating detail to Mr. Lambe's outlandish charges dated February 8, 2020 about the entire series of financial transactions on all cases I handled for him while winning the case against Yitzhak and Kahlon to the tune of $1.6 million. Therein he makes false and defamatory charges to a mutual friend that I have invaded escrow, defrauded him, and "he violated my trust for his own financial gain". Not only is every

charge false, each of Lambe's points had been factually contradicted by the full accounting provided to him the week prior on January 30, 2020. **Exhibit S**.

### **Irreconcilable Conflicts Given the Fee Disputes**

51.     It is impossible to repair the relationship with I previously had with Mr. Lambe.  It remains to be settled in other courts it seems what Mr. Lambe owes.  He has leveled charges of misconduct against me in a knee jerk fashion because he was unwilling to address the numbers.  Those charges, however, now have additional consequences.

52.     Lambe goes further too and issues not so veiled threats of litigation ("We Indemnitors agreed to indemnify and hold harmless the Defendants solely on Mr. Verner's advice by paying all the costs and attorney's fee herein, all the while being assured by him that the indemnification would be limited , if at all.").  Lambe Affidavit, ¶4.

53.      I cannot fairly be engaged in a yoke of future unpaid involuntary servitude while my non-paying principals threaten to sue me for the contract obligations, they entered into in an open federal court record.

54.     In an attempt to keep this litigation on track in light of what was by February 8, 2020 a clear irreconcilable relationship with Mr. Lambe, I suggested to Yitzhak a financial resolution as to legal fees going forward.  **Exhibit Z**.   Ms. Yitzhak apparently does not think it is in her best interest to keep me retained but has, in her opposing papers, joined with Lambe in his multiple threats against me.

55.     Each of those exhibits were served electronically on Mr. Lambe and Ms. Yitzhak and hard copy filed with the Court to preserve the privileged communications.

56.     Neither Mr. Lambe nor Ms. Yitzhak have taken any issue with the invoice specifically addressing the work performed in this action.  Rather, in an attempt to muddy the fee issues on this case in particular, in a blunderbuss fashion Mr. Lambe misstates the total sum he purportedly calculated for all matters I have ever handled for him, to wit, a figure of $798,000.

57.     First, that figure is obviously inclusive of $533,000 earned and agreed on the contingency fees from recovery of the $1.6 million against Kahlon and the Yitzhak CNA policy.  *See*, **Exhibit S**, Memorandum of May 1, 2018, ¶4 (ironically, I unilaterally reduced my fees from a potential $672,000).  Second, Mr. Lambe simply ignores the tremendous amount of work done on all of his cases over the course of six years.  But most importantly, Mr. Lambe flatly ignores the billing on this matter (*see*, **Exhibit S**, approx. pp. 45-59).  In accord with my summary Table at page 60, as of January 20, 2020, there was $31,485.66 owed on this case[6].

58.     Regardless of how well I have been paid in the past for my successful litigation efforts for Mr. Lambe, Mr. Lambe should not be allowed to ignore the increasing large sums which are due to me in this matter.  This seems particularly correct where Mr. Lambe is a remote indemnitor and not the attorney who looks to be exonerated by my efforts.

59.     Finally, no argument has been presented by Yitzhak or Lambe that my requested fees in this particular case are unreasonable.  In fact, the total billing is approximately $95,000 less the Retainer Lambe funded of $50,000 on or about May 18, 2018.  Further, the total sum represents work in a very active commercial litigation which work I actually commenced when the case was first filed

---

6       Originally, I only sought part payment towards these balances which I had estimated based on years of experience and the amount of work I had performed in the case.  Mr. Lambe is certainly no stranger to litigation as these movant's records show and he should have understood as well what the rough status was on fee issues. Mr. Lambe's total bills owed on all cases are a more staggering $72,001.18.

in mid-2016, nearly 2 years before the Judgment in the Federal Action was actually collected so that Lambe could pay me anything. In short, I handled the case without payment for some time.

60. My position on payment of fees going forward in this matter were separately stated to Mr. Lambe and Ms. Yitzhak as seen in **Exhibits T** (Email of February 9, 2020); **U** (Letter to Lambe dated February 9, 2020); **V** (Email to Yitzhak dated February 12, 2020); **Y** (Email to Lambe dated February 23, 2020); and **Z** (Letter to Yitzhak dated February 24, 2020). Lambe and Yitzhak have failed to address any of these communications in their responding papers.

### New Conflicts Arising From Lambe's Charges and Threats

61. Lambe claims on this motion that I told Lambe the indemnity is "limited". Lambe is at least implicitly threatening a lawsuit against me by this false claim. Mr. Spinnell likewise acknowledges as much in the Lambe Memorandum. Now Ms. Yitzhak has also chimed in and challenges my decisions, questioning why you have not made a motion for summary judgment even though fact discovery only concluded in November 2019.

62. Lawyers generally do not need to stay on when it seems likely they are going to be sued if the case does not go well. It places you in a very difficult position of a personal interest conflict with both of your clients, and in my view at least, it is not really in Yitzhak's interest, either.

### Cited Case Law Is Inapposite Or Misapplied

63. First, none of the cases cited by Lambe involve the situation presented by this case, namely, the indemnification and provision of defense counsel by a settled party in a subsequent litigation. In short, there existed an inherent conflict in Verner representing Yitzhak from the outset unless the

parties had the agreement of Verner under the signed conflict letter. This Court denied Kahlon's previous motion to disqualify Verner based on the fact that such signed conflict letters were in existence. *See*, **Exhibit A** and **CC**.

64. However, despite Yitzhak's and Lambe's weak efforts to establish no conflicts between them, as stated above, it is readily apparent that Lambe previously disavowed a full obligation of indemnity to Verner in December 2019 and the references that Yitzhak and Lambe now conveniently make to an oral conversation are not persuasive given their lack of a full commitment to indemnification in their affidavits. It seems clear that they have attempted this appearance of consensus for economic reasons only – they do not want to pay Verner's fees and do not want to pay a new attorney.

65. *Gall v Colon-Sylvain*, 2010 NY Slip Op 34054[U], [Sup Ct, Nassau County 2010]) (unpublished opinion) is distinguishable. There the case was almost ready to be certified for trial. *Id*. at *3. Further, in that case it was unquestioned that the attorney was in fact holding an escrow and that it was pledged by the client for the payment of legal fees. As stated above, Mr. Lambe's assertions concerning "escrow" funds are wild fabrications which are controverted by hard documentary evidence. Mr. Spinnell ignores these documents, adopts his client's fabrications, appears at the 11th hour on disputes which started in mid-December 2019, has not performed any investigation, and joins in threatening me with lawsuits. Further, in adopting Lambe's falsehoods Spinnell conflates all the fees I have earned in six years, including my contingent fees on a $1.6 million recovery, to hide the fact that there is a huge debt owed in this specific matter. *See*, **Exhibit S** (fee invoice on this case).

66.     Further, Lambe does not address that in *Gibson, Dunn & Crutcher LLP v d'Anna*, 2019 NY Slip Op 31494[U], *3 [Sup Ct, NY County 2019]) (another unpublished opinion) the Court denied the motion to be relieved for three reasons, lack of specificity as to the amount of unpaid bills, lack of notice to the client and prejudice to plaintiff because the defendant/clients appeared to be game playing regarding the litigation. *Id*.

67.     Further, the *Deutsch* case simply does not stand for what the Lambe attorney states that it does. *Deutsch v Polly N. Passonneau, P.C.*, 297 AD2d 571, 572 (1st Dept 2002). *Deutsch* was a legal malpractice case which ruled on a statute of limitations question. It did not rule on any motion to withdraw – the First Department only alluded to a trial court ruling where an attorney tried to withdraw *after trial*. There the Court said the attorney had to stay on to "wind up the matter" post-trial and settle the judgment. That factual difference is far afield from this case where there has been no trial, nor any dispositive motion practice.

68.     In a more recent unpublished opinion relied on by Lambe, Justice Gische denied a motion to withdraw finding that "neither firm has established its entitlement to withdraw". *Alter v Oppenheimer & Co., Inc.*, 21 Misc 3d 1136[A], 1136A, 2008 NY Slip Op 52402[U], *7 [Sup Ct, NY County 2008]). However, the motions were denied just days before the trial where the court found on the precise facts that the reasons for withdrawal were not persuasive. There was no suggestion that the clients were going to sue the attorneys, or vice/versa. Nor was there a conflict between the clients themselves, other than one wanting to settle and the other wanting to go to trial.

69.     Further, Justice Gische found that the conflict letter between two defendants allowed the firms to represent the remaining client rather than granting them the right to withdraw from the action. *Id*. at *5. In this case the conflict letter which has been relied upon previously by this Court

states that in the event of a conflict, "the law firm shall have the right to terminate its representation…" *See*, **Exhibit A**, fn. 5 (ECF# 70)(Order denying disqualification) and **CC**.

70.     Lambe suggests that I should simply sue for fees and/or await his arbitration.  It would be an ethical violation if I were to sue for fees while representing parties in this action.  The practice may actually be outright banned by case law.  "At this stage of the litigation, the allegations and arguments that plaintiff violated the Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.7 (a) by suing Fideicosa for fees while still representing it in the federal action preclude a finding that plaintiff  is likely to succeed on the merits.  *Freeman Lewis LLP v Financiera De Desarrollo Indus. y Commercial S.A.*, 172 AD3d 574, 574-575(1st Dept 2019).

71.     Finally, Lambe's suggestion of fee arbitration while the case is pending seems unworkable.  The current fee dispute is over $50,000 and is therefore outside of any arbitration rights established by 22 NYCRR § 137.

72.     Without the ability to sue Mr. Lambe for my fees -- in litigation or arbitration -- while representing any of Lambe's interests in this case, I should therefore be allowed to withdraw now with the Court's permission given the other conflicts and irreconcilable differences established on this record.

### The Covid-19 Pandemic

73.     The difficulties presented to me and my practice by the pandemic could not be foreseen when I filed my motion papers on March 3, 2020.  However, the effects have been severe.

74.     As a result of the shutdown of the Courts and because I was commuting from Durango, Colorado my income has been effectively shut down entirely.  While my application for SBA

emergency loan funds has been submitted, it appears that both my banking institutions have ceased processing such applications.

75.     As I informed this Court's staff recently, I am 60 years old, have suffered from bronchitis since a child, nevertheless smoked for 35 years,  am a Type II diabetic with already lowered immunity and must suffer air travel when the Courts resume their full operations.  Frankly, I will not travel to New York City or Long Island given my pre-disposed condition until I am vaccinated and there is no means of determining that timing.

76.    My need for steady income to ensure that 4 children complete college in the next three years, coupled with my health concerns, render it impossible to stay on this matter any longer even if this Court were to determine that the clients are not conflicted or that my serious differences with the clients could be overcome.  I am now seeking permanent reciprocal admission in the state of Colorado and restructuring my practice accordingly to combat the economic downturn and health concerns due to the virus.

WHEREFORE, I hereby respectfully submit that my application for an order granting me and my firm leave to withdraw as counsel due to conflicts of interest, irreconcilable differences and fee non-payment should be granted together with such other and further relief as this Court deems just and proper.

Dated:  June 6, 2020

_____
PAUL W. VERNER

# EXHIBIT B

L137648E

# CNA

Continental Casualty Company
Chicago, IL 60604

UNDERWRITTEN BY:
CONTINENTAL CASUALTY COMPANY

THIS DOCUMENT CONTAINS A WATERMARK - HOLD UP TO LIGHT TO VIEW

VOID IF PURPLE BACKGROUND IS ABSENT

| Claim Number | Desk Code | Insured/Client | Bank Acct. | 66-156 |
|---|---|---|---|---|
| LW A16194 | | | | 331 |

10459064 9
Date Issued 02/26/16
4759628092

| Prefix & Contract No. | | Claimant | Issuing Off. | No. |
|---|---|---|---|---|
| LAW-425.197851 | V/O | THE LAW OFFICES OF ERICA T.YIT | LW | |

| From-thru (Dates) | In Payment of | | Date of Loss | |
|---|---|---|---|---|
| | | SETTLEMENT LWA16194 | 04/27/15 | |

PAY FIVE HUNDRED NINETY-FIVE THOUSAND TWO HUNDRED SEVENTY-FOUR AND 87/100THS

*****$595,274.87

Dollars

TO
THE
ORDER
OF

VERNER SIMON, INC. F/B/O SUNRAY SOLAR, INC.
AS ATTORNEYS FOR SUNRAY SOLAR, INC.

IL    60604

Wells Fargo Bank, N.A.

VOID IF NOT CASHED IN SIX MONTHS
FROM MONTH OF ISSUE

⑈10459064 9⑈ ⑆053101561⑆ 4759628092⑈