UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

THE LAW OFFICES OF ERICA T. YITZHAK
AND ERICA T. YITZHAK, ESQ. P.C.,

                              Petitioners,

      -against-

TROY LAMBE, MAX DIVERSIFIED INC.,
SUNRAY SOLAR INC. AND PAUL VERNER,

                              Respondents,
------------------------------------------------------------------------X

Case No. 24-cv-3553-RER

**DECLARATION OF PAUL W. VERNER ACCOMPANYING DOCUMENT PRODUCTION**

PAUL W. VERNER, pursuant to 28 U.S.C §1746, hereby declares the follows facts and submits the appended authenticated documents (which have been simultaneously produced to Petitioner) under penalty of perjury under the laws of the United States in satisfaction of the Court's Minute Order dated September 16, 2024 (ECF#017)(extended by Electronic Order dated September 27, 2024):

**Scope of Production**

1.    The undersigned understands the scope of the production of documents which was so-ordered by the Court is focused on those records related to the distribution of settlement proceeds received by me on behalf of my former client, Mr. Troy Lambe, and his companies, who were awarded in the approximate sum of $1.6 Million from settling with Petitioner, Ms. Yitzhak, for $600,000 and obtaining a jury verdict for $1 Million in the federal case of *Lambe, Sunray Solar et. al., v. Kahlon and Atlas Solar Holdings, LLC and Erica T. Yitzhak,* Case No. 2:13-cv-03126 ("Federal Action").

2.     I have again produced relevant bank statements (supplementing my prior production) and written memorandums/authorizations between Mr. Lambe and myself which will definitely demonstrate that I currently hold <u>zero funds</u> related to Mr. Lambe or his companies or anyone else related to Mr. Lambe and his companies.  I have not held any funds in which either Mr. Lambe or his companies, or anyone else related to Mr. Lambe and his companies, could claim any interest since the year 2018.  All funds related to the Federal Action were disbursed by me in 2016 and 2018 to the appropriate client parties at Mr. Lambe's direction or were otherwise earned by me through 20202 as legal fees in other matters and thereafter disbursed to me or my creditors or my designees years ago.

3.     I have previously submitted through my counsel to the Petitioner's counsel bank records and client accounting records demonstrating that I earned approximately 1/3 of the $1.6 million received in settlement proceeds from the Federal Action together with substantial additional attorneys' fees earned in the defense of Mr. Lambe and his companies, as well as the defense of the Petitioner herself, in lawsuits other than the Federal Action. [1]

4.      Since my first production I read the Petitioner's counsel's subsequent writings where he feigns ignorance of my earned fees and knowingly makes specious arguments asserting that approximately 1/3 of the $1.6 million received in settlement proceeds from the Federal Action are still held in my accounts.  Certainly, Petitioners' counsel will concur that I did not litigate the Federal Action for free and that I had good reason to disburse my attorneys' fee earnings years ago.  Nevertheless, Petitioners' counsel continues press a known dead issue and waste the Court's time in a charade.  Indeed, it appears that Petitioner's counsel may simply be attempting to  seek litigation leverage.  Clearly, this "turnover action" first brought in Nassau County state court could

---

[1]     *See*, ECF## 16-1 and attached Exhibits.

have been a simple discovery demand in Petitioners' equally specious malpractice case over in the Southern District.  *See*, *Yitzhak v. Verner*, 23-cv-2084 (SDNY).  It may be that the design of these "discovery" efforts here are only to harass and overburden me.

5.     For aide of the Court I have created a Trust Ledger table (much as I had previously created for my client Mr. Lambe) and have attached thereto the relevant bank records and other documents I have produced  to the Petitioner which substantiate the mathematical **calculation to zero (actually to negative $60,000 +/-).**[2]

6.     I am hopeful that the clear meaning of the Trust Ledger will demonstrate to the Court what should already have been easily concluded by Petitioner and her attorney as soon as I produced my other Retainer Agreements and past accounting records – which is that after my payment of the clients' portion of the settlement recovery, my attorneys' fees and other disbursements made to venders in the Federal Action, the balances of the settlement proceeds from the Federal Action once in my accounts in 2016 and 2018 are now **zero**.  That has been the case since January of 2020.

**Retention and Yitzhak Settlement Monies**

7.      Attached here as **Exhibit A** is a true and correct copy of my Retainer Agreement with Troy Lambe and his companies whereby I was retained to litigate the federal case of *Lambe, Sunray Solar et al. v. Kahlon and Atlas Solar Holdings, LLC and Erica T. Yitzhak*, Case No. 13-cv-3126.

---

[2]  I frankly wish to protest this compelled additional production because as an officer of the Court the inquiry should have ended as soon as I produced the evidence that I was entitled to approximately 1/3 of the $1.6 million in settlement recovered after trial and jury verdict with additional fees.  It is patently silly for anyone, including Petitioner and her counsel, to believe, let alone assert in a federal court, that as Plaintiff Lambe's counsel I would sit on my earned fees or otherwise hold any additional funds for over 6 years in my trust accounts for any purpose whatsoever.  Having so affirmed that I did not, that should have been the end of the inquiry.

(the "Federal Action") on a hybrid hourly and contingent fee basis. This was later converted to pure contingency – less payments made – because the number of hours spent would have outstripped a 1/3 contingent fee by over two hundred thousand dollars.

8. Attached here as **Exhibit B** is a true and correct copy of the judgment after jury verdict for $1 Million against the Kahlon Defendants in that case entered on February 1, 2016 and the Mandate after the Second Circuit affirmed the verdict and judgment on September 1, 2017 after Kahlons' appeal.

9. Prior to jury's verdict, on January 29, 2016, in Court, the then Yitzhak Defendants settled with my clients for the balance of their insurance policy issued through CNA. The balance of the self-liquidating policy, after settlement of a prior attorneys' lien, was $595,274.87 which were tendered to me as attorney for the Lambe/Sunray Plaintiffs or about March 11, 2016.

10. Attached as **Exhibit C** is a true and correct copy of the Yitzhak settlement check received from Yitzhak's carrier, CNA. Attached as **Exhibit D** is a true and correct copy of my 2016 Wells Fargo New York IOLTA account statements (March 2016 through June 2016) showing the deposit of the Yitzhak settlement funds on March 11, 2016 and subsequent disbursements.

11. The CNA settlement check in the amount of $595,274.87 was deposited into my IOLTA account on March 11, 2016. *See*, the attached Trust Ledger, **Exhibit D**. Next, the **client funds of $320,250.00** were wired to Mrs. Lambe's bank account on March 21, 2016. *Id*.

12. Thereafter, pursuant to agreement and authorization from Mr. Lambe (Memorialized by a Memo, **Exhibit E**), my **attorneys' fees of $215,000** were authorized by Mr. Lambe on March 21, 2016.

13. The sum of **$60,000 was *initially* left** in the IOLTA account at that time to cover possible unrelated creditors' claims against Lambe and his companies. (Because the Yitzhak and Kahlon Defendants in the Federal Action had effectively and abruptly put Lambe out of business by their

torts against him, he suffered economic calamity and I was also handling the defense of creditors' claims against Lambe in 2016 through 2019.) As set forth below and in the Trust Ledger, that $60,000 was eventually paid out on claims against Lambe or was converted to earned attorneys' fees and credits to Troy Lambe.

### Collection of the Kahlon $1 Million Surety Bond Takes Two Years to Collect

14. Because of multiple state court lawsuits commenced by the Kahlon Defendants in Nassau County Supreme Court throughout 2016 and 2017 to frustrate turnover of the $1 Million appellate surety bond, even after the Second Circuit affirmed the verdict and the $1 Million judgment, the surety bond satisfying the Kahlon cash bond staying enforcement pending his appeal was not delivered to me as attorney for the Lambe/Sunray Plaintiffs until about May 7, 2018.

15. I was also entitled to be paid to defend these multiple lawsuits brought by Kahlon's scorched earth tactics under separate Retainer Agreements attached here as **Exhibit F**. All the while creditors still sued Mr. Lambe and I defended those lawsuits as well. Kahlon against sued Lambe in 2017 for defamation in New Jersey state court and that case was settled for $15,000 from monies ultimately received from the Lambe/Sunray settlements with Yitzhak and Kahlon.

16. Ultimately these suits were defeated and the Kahlon surety bond proceeds were paid over to me in May 2018. Attached as **Exhibit G** is a true and correct copy of my 2018 Wells Fargo New York IOLTA account statements (May 2018 through October 2018) showing the deposit of the Kahlon **surety bond proceeds of $1,009,000.00** on May 4 and 7, 2018.[3]

17. Thereafter, pursuant to the memorandums and authorizations received from Mr. Lambe (**Exhibits D and H**) the **client funds of $537,499.00** were disbursed in four separate wire transfers

---

[3] In the two years that the surety bond was in effect, $9000 in additional interest had accrued.

on May 17, 2018. As is seen by **Exhibit H**, a copy of Mr. Lambe spread sheet showing distributions to him and other payments for other cases being handled by me at the time, the client funds were distributed at Mr. Lambe's direction as follows:

$185,000 to Janet Lambe on May 17, 2018;
$15,000 to Max Diversified on May 21, 2018;
$275,000 to Troy Lambe on May 21, 2018
$62,449 to Troy Lambe on May 30, 2018
_____
**$537,449 TOTAL**

18. Part of the settlement terms made between the Lambe/Sunray Plaintiffs and the former Yitzhak Defendants was the stipulated terms that if in the future, the Kahlon Defendants lodged their threatened by unfiled cross-claim for attorney malpractice against attorney Yitzhak, I would be appointed defense counsel because of my knowledge of the underlying facts and law. The Lambe/Sunray Plaintiffs would indemnify Yitzhak and pay the defense costs and my attorneys' fees. Attached as **Exhibit I** is a true and correct copy of the Yitzhak settlement agreement made on the record in Court and then later formalized and memorializing those terms.

19. The **earned fees of $336,333** from the Kahlon proceeds were thereafter distributed to my myself, my creditors, and my designees in due course. By October 2018 zero funds were left in my NY IOLTA account.

### Subtotal After Earned Fees From Yitzhak and Kahlon Settlements Were Paid

20. Accordingly, as of May 17, 2018, after accounting for my earned fees from Yitzhak and Kahlon, $215,000 and $336,000 respectively, the gross balances left in my IOLTA Trust accounts before calculating any other authorized payments of other attorneys' fees to me was $60,000 from the 2016 Yitzhak Settlement proceeds and $135,048 from the 2018 Kahlon surety bond proceeds or a total of **$195,048**. *See*, Trust Ledger. However, all of these monies were eventually paid to

me in due course pursuant to other fee agreements in Mr. Lambe's other litigations as explained below.

21. First, a handful of other cases had been litigated before the Kahlon surety bond was paid over and attorneys' fees were due on those cases. These were authorized by Troy Lambe to be paid on May 16, 2018 in his email correspondence to me dated May 16, 2018 (**Exhibit H**). They were as follows:

| | Amount | Basis | File # | Case Name |
|---|---|---|---|---|
| a. | $40,000 | Fees Earned | 982.010 | Kahlon Appeal |
| b. | $3000 | Costs Reimbursed | 982.010 | Kahlon Appeal |
| c. | $14,000 | Fees Earned | 982.010GGG | Bassie Litigation |
| d. | $14,500 | Fees Earned | 982.010C | Defense of Yitzhak adv. Kahlon |
| e. | $20,000 | Fees Earned | 982.010D | Defense of Kahlon v. Lambe, Yitzhak et al |
| f. | $10,750 | Local Counsel Fees | 982.010D | Defense of Kahlon v. Lambe, Yitzhak et al |
| g. | $10,000 | Fees Earned | 982.010GG | Sovereign Bank Litigation |
| h. | $3300 | Fees Earned | 982.010G | Vacca Litigation |

**$115,550.00**

22. Thus the net figure of $115,555 plus my $336,333 in fees from the Kahlon Settlement equaled **$448,883**. That figure is confirmed by Mr. Lambe's email table to me dated May 16, 2018. (**Exhibit H**). *See also*, **Exhibit J**, which is a true and correct accounting that was given to Mr. Lambe on May 15, 2018 to which Mr. Lambe responded with **Exhibit H** the next day and which described the additional fees I had earned in his other cases and the Retainer Deposits he was required to leave with me.

23. Furthermore, Lambe also paid to me additional up front Retainers on litigations that were continuing after May 2018. That figure is confirmed by Mr. Lambe's email table to me dated May

16, 2018. (**Exhibit H**). *See also*, **Exhibit J**, which is a true and correct accounting that was given to Mr. Lambe on May 15, 2018 to which Mr. Lambe responded with **Exhibit H** the next day and which described the additional fees I had earned in his other cases and the Retainer Deposits he was required to leave with me.

24. These separate authorized Retainer Deposits to cover the future attorneys' fees which would become due on other defense cases I was handling for Mr. Lambe were as follows:

| Amount | Basis | File # | Case Name |
|---|---|---|---|
| a. $50,000 | Retainer | 982.010G | Continued Defense of Yitzhak adv. Kahlon |
| b. $3000 | Retainer | 982.010I | Landlord Tenant case |
| c. $5000 | Retainer | 982.010L | Possible suit against Ed Gurin |
| d. $15,000 | Retainer | 982.010E | Defamation case brought by Kahlon |
| **$73,000** | | | |

25. In summary, the $73,000 in advanced Retainers plus the $336,333 in Kahlon settlement fees plus $115,550.00 in additional earned fees on Lambe's other litigations totaled **$524,883.00**. Again, *Mr. Lambe confirmed those figures in his email to me dated May 16, 2028*. (**Exhibit H**).

26. In conclusion, from the $1,009,000 in Kahlon surety bond proceeds, I was authorized to take in fees and retainers the total sum of $524,883 and the Lambe distributions totaled $484,117 thereby leaving **Zero** in my IOLTA trust account after these distributions were made.

### By March 2020 Lambe Owes Me Money

27. Again, **Exhibit F** is a true and correct copy of my joint October 17, 2017 Retainer Agreement with the former Lambe/Sunray Plaintiffs and the Yitzhak Defendants which covered my work when Kahlon did, in fact, sue Yitzhak for malpractice in the case *Kahlon, et al. v. Yitzhak, et al.,* Index No. 601659/2016 (Nassau Cty.)(hereinafter "Yitzhak Defense Case").

28. Ultimately, the Yitzhak Defense Case (together with other ongoing litigations) approached a point where my fee bills outstripped the initial retainer which Mr. Troy Lambe had authorized and paid me. Mr. Lambe objected to paying my additional fees commencing in the middle part of 2019. I presented balances on all bills/invoices (**Exhibit J**) which showed total balances of over $50,000 after crediting all initial Retainer Deposits and the balances accruing in the Yitzhak Defense case alone in early 2020 rose to over $31,000 (**Exhibit K**). Mr. Lambe and I soon experienced a disintegration of what was previously a very good working relationship.

29. My Motion to Withdraw as counsel was heard by Justice Vito DeStefano in 2020 and I placed all financial records including those addressing the fact that all monies Lambe had left as Retainers with me (for the Yitzhak Defense Case and 4 other Lambe/Sunray defense cases I was handling for Lambe/Sunray, had been expended. Mr. Lambe and Ms. Yitzhak were privy to those 2020 filings. The Motion to Withdraw was denied with leave to renew. I continued to work on the case accruing an estimated $25,000 in additional fees which have not yet been billed, and therefore, are not yet paid.

30. Ultimately, in 2021 Justice DeStefano decided a summary judgment motion which was against attorney Yitzhak and her law firm. The Yitzhak Defendants then sued me and that action is now venued in the Southern District of New York – described by this Court as "the more fulsome litigation pending in the SDNY". Minute Order, ECF#010. It is respectfully submitted that this discovery effort in this "turnover" action should have been a discovery demand in the SDNY case.

31. As Mr. Lambe and Ms. Yitzhak are well aware, no money was ever placed in my trust account by Mr. Lambe to satisfy any indemnity obligation he may have had to Ms. Yitzhak. Further, Mr. Lambe also is well-aware that all monies beyond my attorneys' fees earned and costs reimbursed from the Federal Action, were retainers for his defense cases and for the Yitzhak Defense Case. They are both also fully aware from my 2020 Motion to Withdraw and a complete

fee accounting filed in Nassau County with Justice DeStefano that the retainers set up for the Yitzhak defense were expended and a balance was owed by Lambe. The current counsel for Yitzhak should be fully aware of these facts as well.

32. Finally, attached here as **Exhibit K** is a true and correct copy of the last invoice on the Yitzhak Defense Case showing a total of approximately $95,000 owed as against the initial Retainer of $50,000 and the balance has never been paid.

33. In summary, the **Exhibits A-K** show the receipt of the two settlement sums in 2016 and 2018, the disbursements to the clients of net settlement proceeds after deducting my attorneys' fees and the fact that the amounts left in my bank accounts were earmarked for defense costs in Yitzhak Defense Case and at least six other Lambe/Sunray defense cases.

34. The IOLTA bank statements prove that all settlement funds were either paid out in attorneys' fee or were paid to the Lambe/Sunray clients. This is shown by **Exhibit J**, Troy Lambe's own email where he asserts he is entitled to receive $537,499 from the $1,009,000 in 2018 surety bond proceeds.

35. Accordingly, I respectfully submit that the discovery demands have been fully responded to by these produced records and this Declaration. I further submit that it is amply demonstrated that I have no funds owned by the Judgement Debtors to turn over and the Petition should be dismissed as against me.

Dated: New York, New York
   October 7, 2024

                */s/ Paul W. Verner*
                **PAUL W. VERNER**
                PV-0274